Melvin A. BARNHART et al.

v.

Honorable Marvin MANDEL, Governor of the State of Maryland; Willard A. Morris; and Honorable Francis B. Burch, Attorney General for the State of Maryland.

Civ. 70–19.

United States District Court,
D. Maryland.

Feb. 17, 1970.

Final Decree Feb. 25, 1970.

Lawrence B. Scally, Baltimore, Md., and Jerome W. Taylor, Towson, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, Robert F. Sweeney, Deputy Atty. Gen. of Maryland, and Henry R. Lord, Asst. Atty. Gen. of Maryland, for defendants.

Before WINTER, Circuit Judge, and NORTHROP and KAUFMAN, District Judges.

FRANK A. KAUFMAN, District Judge:

On November 5, 1968, at the last general election held in Maryland, 1,264,629 Maryland residents cast their ballots for President and Vice-President of the United States, for United States Senator, for eight members of the United States House of Representatives, and for a number of state appellate and trial judges; and, in addition, recorded their preferences in connection with a number of questions pertaining to constitutional amendments and matters subject to referenda. 1,235,039 persons—that is, all but 25,590 who went to the polls that day—cast ballots for the presidential and vice-presidential candidates; 1,133,-727 persons voted in the race for the United States Senator; 1,119,648 voted for candidates for the federal Congress; 2,034,545 votes were cast in connection with the election of state judges, and 2,529,545 with regard to proposed constitutional amendments and matters subject to referenda. In all, 7,952,504 votes were cast for candidates and issues. 2,368,766 votes were cast in the two statewide elections, i. e., for President and Vice-President, and for the United States Senate.

George C. Wallace, former Governor of Alabama, appeared on the ballot by petition, seeking the office of President of the United States. Mr. Wallace, and his running-mate for the Vice-Presidency, S. Marvin Griffin, who were designated on the ballot as candidates of the American Party, received 178,734 votes representing approximately 14.5% of the total votes cast for the offices of President and Vice-President; about 7.-5% of the total votes cast in the two statewide elections for the Presidency and Vice-Presidency and for the United States Senate; and slightly in excess of 2% of the total votes cast for all candidates and for all issues.[1]

Plaintiffs, who challenge the constitutionality of certain portions of the election laws of Maryland, Md.Ann.Code art. 33 (1957 Ed., as amended, Supp. 1969), are "The American Party of the State of Maryland" (American Party) and fourteen individuals. The latter are

---

1. The parties have stipulated that the figures appearing *supra* in this opinion are substantially accurate.

alleged to be citizens of the United States, residents of the State of Maryland and persons presently eligible to vote and seek elective office in Maryland. One of them, Verona K. Redmond, is alleged to have been an elector in the November, 1968 election, and is further alleged to have called a membership meeting of the American Party on November 15, 1969. Another of the individual plaintiffs, Henry T. Fields, Sr., is alleged to have tendered his application as a candidate for the office of Member of Congress from the sixth congressional district of Maryland to one of the defendants, William A. Morris, the State Administrator of Election Laws.[2] Mr. Morris is alleged to have refused to accept that application on the sole ground that Mr. Fields is affiliated with the American Party. Named as defendants are the Honorable Marvin Mandel, Governor of Maryland, the Honorable Francis B. Burch, Attorney General of Maryland, and Mr. Morris.

Defendants have filed a motion to dismiss the complaint under Rule 12(b) (6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." In the context of that motion, all facts well pleaded by plaintiffs must be assumed to be true.

The complaint also states that notices of the American Party's membership meeting on November 15, 1969 were sent to all persons registered in any of Maryland's political subdivisions as members of the American Party, and that at the said meeting, a constitution and bylaws were adopted and officers designated by the meeting were authorized to participate in this case on behalf of the American Party.

In instituting this suit, plaintiffs requested the convening of a three judge court pursuant to 28 U.S.C. § 2281, basing that request on alleged violations of requirements of the federal Constitution by the provisions of present Article 33 of the Maryland Code.

Defendants opposed the demand for a three judge court on the ground that plaintiffs' challenge lacks substantiality and is frivolous. Under 28 U.S.C. §§ 2281 and 2284(1), a federal district judge is required to convene a three judge district court only if there is a substantial, nonfrivolous attack upon the constitutionality of a state statute. Swift & Co. v. Don J. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Green v. Board of Elections, 380 F.2d 445, 448 et seq. (2d Cir. 1967); German v. South Carolina State Ports Authority, 295 F.2d 491, 494 (4th Cir. 1965); Jacobs v. Tawes, 250 F.2d 611, 614 (4th Cir. 1957).[3] In this case, the district judge to whom the request for a three judge court was presented determined that the issues posed could not be classified as insubstantial or frivolous. All members of this three judge court agree that the questions presented herein pose important federal constitutional problems.

### I.

To understand the issues which this litigation raises, it is necessary first to

---

2. In a memorandum filed in this case, plaintiffs' attorneys have informed this Court that the application of Raymond Trent to appear on the ballot as a candidate for the office of Member of House of Delegates of Maryland has been accepted by the election officials of Anne Arundel County.

3. Also, Wetherington v. Adams, 406 F.2d 724 (5th Cir. 1969), reversing the district

judge's refusal to call a three judge court in connection with a challenge to the Florida election law, and Lyons v. Davoren, 402 F.2d 890 (1st Cir. 1968), involving questions under the Massachusetts election law, affirming the district judge's refusal to ask for a three judge court. In both cases, the Courts of Appeals applied the test of substantiality and absence of frivolousness.

analyze the pertinent portions of the Maryland election laws:

The current Maryland election law, enacted by the Maryland legislature in 1969, to become effective[4] July 1, 1969, provides for a State Administrative Board of Election Laws, consisting of five members, and for a State Administrator of Election Laws to perform such duties as may be assigned to him by the Board. Md.Ann.Code art 33, § 1A–1 (1957 Ed., as amended, Supp. 1969).[5] Section 1A–1(f) empowers the Board to adopt rules and regulations to assist the boards of supervisors of elections in the various Maryland jurisdictions to comply with the requirements of Article 33 with respect to registration, voting and elections and in otherwise fulfilling their duties under the said article.

Section 4–1 provides in pertinent part, as follows:

(a) Nominations for offices which are filled by elections under the provisions of this article *may* be made by primary election, primary meeting, or petition.

(b) Nominees of political parties which polled 10% or more of the entire vote cast in the State in the last preceding general election *shall* be nominated by primary election as hereinafter provided.

(c) Nominees of political parties which polled more than 1% but less than 10% *may* be nominated by primary meeting as hereinafter provided.

(d) Nominees other than of political parties as provided for in (b) or (c) above *may* be nominated by petition as hereinafter provided. [Emhases supplied].

\* \* \* \* \* \*

Section 4A–1 sets forth requirements for filing certificates of candidacy.

Section 5–1 relates to parties using primary elections and reads as follows:

Any political party which at the general election next preceding any primary election to be held hereunder, shall have polled ten per centum or more of the entire vote cast in the State *shall* nominate (1) all its candidates for public office; and (2) all members of the State and local central committees in said political party by means of primary elections conducted under the provisions of the subtitle; and shall elect the appropriate number of delegates to a national convention as provided in this article. The several boards shall not print on the official ballot to be voted at any general or special election to be hereafter held the name or names of any such candidate or candidates for election in Baltimore City or any of the counties of the State of any of said parties who shall not be so nominated and whose nomination shall not be certified to them or to the Secretary of State as having been so nominated. [Emphasis supplied]

Section 5–1 does not refer to section 4–1(b), but clearly implements the latter.

Section 6–1 defines a "primary meeting" and states how it is to be called and conducted. It reads as follows:

(a) *Defined.* [Italics in original] —A primary meeting within the meaning of this article is an organized assemblage of delegates or voters, registered under this article as members of a particular party whose highest candidate at any election held within two years next preceding the holding of such meeting polled more than one per centum and less than ten per centum of the entire vote cast in the State, county or other division or district for which the nomination is made. Candidates of such a party for public office *may* be nominated by a

---

4. Md. Acts of 1969, ch. 555, § 3.

5. All references hereinafter to sections are to sections of Article 33.

Plaintiffs allege that while Mr. Morris has been appointed to the office of Administrator, the Governor has not appointed any members of the Board.

primary meeting as thus defined. [Emphasis supplied].

(b) *How called and conducted.* [Italics in original]—The primary meeting shall be called by the party chairman, if one has been selected, and if not, by the party's candidate for the highest State-wide office in the preceding general election, upon thirty days' notice by publication in newspapers of circulation deemed adequate to reach all of the party's members, the notice to be reprinted twenty, ten and five days prior to the primary meeting. The notice will designate the time, place and purpose of the meeting and the agenda to be followed. The meeting will be conducted according to Roberts Revised Rules of Order, unless the party shall have previously adopted and filed with the Secretary of State a constitution and bylaws which comply substantially with § 11–1 of this article.

Section 6–1 does not refer to section 4–1(c), but, as in the interrelation of section 5–1 and section 4–1(b), section 6–1 obviously is written in the light of section 4–1(c).

Section 7–1(a) provides in pertinent part:

(a) *Who may be nominated by petition.* [Italics in original]—A candidate for any public office who is neither a candidate nor a registered member of a party whose nominee *must* be nominated by primary election or whose nominee *may* be nominated by primary meeting *may* be nominated by petition, as in this section provided. * * * [Emphases supplied].

Section 7–1(b) provides for nomination by petition "signed by not less than three per centum (3%) of the registered voters who are eligible to vote for the office for which such nomination by petition is sought." There is no reference in section 7–1 to section 4–1(d), but, again, it is clear that section 7–1 furthers the intention of section 4–1(d).

Section 10–1 provides in part:

It shall be lawful for any party having polled 10% or more of the votes cast at the previous general election to elect and hold a party convention.
* * *

The words "entire vote" which appear in sections 4–1, 5–1, 6–1 and 11–1 (hereinafter referred to) are replaced by the word "vote" in the above-quoted portion of section 10–1.

Section 11–1(a) provides as follows:

(a) *Adoption of constitution and bylaws.* [Italics in original]—Any political party which at the general election next preceding any primary election held hereunder, shall have polled ten per centum or more of the entire vote cast in the State, *shall* adopt for the conduct of its affairs, a constitution and bylaws. The constitution and bylaws *shall* be adopted at a meeting of this political party, to be convened by the party nominee for the office of Governor, or if there is no such nominee, then by the nominee for United States Senator, or if none, by the nominee for Comptroller, or if none by the nominee for Attorney General, and said nominee shall preside as president pro tem of the meeting until such time as party officers are elected. The delegates to this meeting *shall* be selected by the State central committee for each county and legislative district of Baltimore City and the number of the delegates shall be not more than twice the number of Delegates each county and legislative district elects to the House of Delegates of Maryland. Regardless of size, each such delegation *shall* have the number of votes equal to the number of Delegates elected to the House of Delegates. [Emphases supplied].

Section 11–2(a) and (b) state:

(a) *Party central committees for State.* [Italics in original]—Any party having polled ten per centum or more of the votes cast at the previous general election *shall* have a central committee for the State which shall be

its governing body; such committee to be composed of the members of the central committee of such party for the several counties and Baltimore City.

(b) *Party central committees for counties and Baltimore City*. [Italics in original]—The central committee for the counties or Baltimore City *shall* be selected as provided in this article. The central committee for any county or Baltimore City *shall* consist of such number of persons and be elected from such political subdivisions as shall be determined by party constitution and in a State central committee meeting shall be entitled to cast the same number of votes as that county or legislative district of Baltimore City shall be entitled to elect to the House of Delegates of Maryland. Any vacancy in the party central committee for any county or legislative district of Baltimore City, Anne Arundel or Baltimore counties *shall* be filled by the remaining members of the committee elected from that county or legislative district of Baltimore City, Anne Arundel or Baltimore counties. [Emphases supplied].

Section 11–3 contains the following provisions:

(a) *Exclusive authority; incorporation of political parties prohibited*. [Italics in original]—The governing body of a political party shall be the State central committee for the State, and no other organization, whenever or however incorporated, shall be entitled to any recognition or official status for any purpose contained in this article. Political parties in this State, whether making nominations through primary elections or primary meetings, are expressly forbidden to incorporate under the general laws of this State providing for the formation of corporations.

(b) *Penalties*. [Italics in original]—It shall be unlawful for any organization other than the State central committee for the State to hold itself out as the official organization or governing body of any political party. Violation of this section is punishable by a fine of not more than one thousand ($1,000) dollars, or by imprisonment in jail for a period of six (6) months, or by both fine and imprisonment, in the discretion of the court.

Section 14–1(i) provides:

(i) *Other ballots; write-ins*. [Italics in original]—Ballots other than those printed by the respective boards, according to the provisions of this section, shall not be cast or counted in any election. This subsection shall not prevent any voter in any general election from writing on his ballot and marking in the proper place the name of any person other than those already printed for whom he may desire to vote for any office. Such votes shall be counted the same as if the name of such person had been printed upon the ballot and marked by the voter.

Section 5–3(d) directs:

(d) *Write-in votes prohibited*. [Italics in original]—There shall be no names of candidates written in at primary elections.

Sections 3–8(b), 4A–3 and 7–1(e) set forth provisions for the latest dates upon which changes of party affiliation may be registered and certificates of candidacy may be filed. The parties hereto have agreed that with regard to the forthcoming November, 1970 election, party affiliation may be changed until March 16, 1970 and the final filing date for candidates is July 6, 1970. Plaintiffs contend that it is unreasonable to require voter registration changes to take place so long before the filing of the certificates of candidacy. That challenge is rejected; the provision would seem a reasonable exercise by the legislature of a state's "broad powers to regulate voting." Williams v. Rhodes, 393 U.S. 23, 34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

## II.

Plaintiffs' principal challenge herein is that the State of Maryland has pres-

ently made it impossible for the American Party to establish itself under Article 33 as a "political party," defined in section 1–1(a) (15) as "an organized group of the electorate that attempts to control government through election of its candidates to office," and for that party to have the names of its candidates appear on the ballot in Maryland in the general election to be held in November, 1970.[6] In passing upon that attack, the first question of statutory construction to which this Court has been asked by plaintiffs to address itself is the meaning of the words "entire vote" as they appear in sections 4–1, 5–1, 6–1 and 11–1. Plaintiffs contend that those words refer to the number of voters who voted in the last general election in 1968, i. e., 1,264,629. Defendants take the position that the words "entire vote" mean all of the votes cast for statewide offices in the November, 1968 general election. Thus, in connection with that election, defendants say the words mean all votes cast for President and Vice-President, and for United States Senator, i. e., 2,368,766.[7]

If plaintiffs' contention is sound, then section 4–1(b) and section 5–1 provide that in order for the names of any American Party candidates to appear on the ballot in the general election in 1970, that party *must* nominate them in a primary election. This would be so because, under plaintiffs' approach, Mr. Wallace received about 14.5% of the votes of the number of persons (1,264,629) who went to the polls in the November, 1968 election. On the other hand, if defendants' position is sound, then the indicated statutory route open to candidates of the American Party is under the primary meeting provisions of sections 4–1(c) and 6–1. This would follow because Mr. Wallace's 178,734 votes constitute 7.5% of 2,368,766 votes, i. e., the number of votes cast in the statewide balloting for President and Vice-President and United States Senator. Finally, if the words "entire vote" refer to all votes cast for candidates and issues, then, again, the nominees of the American Party would have available to them the procedures set forth in sections 4–1(c) and 6–1, since Mr. Wallace, under that approach, received 2.2% of the 1968 vote.[8]

Defendants, in written and oral presentations to this Court, have taken the position that the sections 4–1(d) and 7–1 petition route is open to the American Party and its candidates in connection with the upcoming election, just as the

6. Plaintiffs also attack certain of the provisions in Article 33 which, according to plaintiffs, place undue emphasis upon the status of and grant undue powers to the Democratic and Republican parties as the two principal political parties in the State, as opposed to the status and rights of third parties, be they existing or still unformed. In the context of this case, this Court finds no reason to pass upon those questions.

7. It has been suggested that the words "entire vote" may mean the total vote for all candidates and issues, i. e., in 1968, almost eight million. We reject that construction as unreasonable. If there were a sufficient number of candidates and issues on the ballot (as, for example, in a year when statewide state offices, as well as statewide federal offices, are to be filled, and numerous constitutional issues and referenda are to be voted upon), it is conceivable that under that test no political party would receive 10% of

the "entire vote" which would mean that even the Democratic and Republican parties might not be required to hold primary elections in the next following general election.

8. Neither section 4–1(b) nor section 5–1 nor any other part of Article 33 explicitly prohibits the use of the primary election route by parties polling less than 10% of the vote. That plus the permissive language of section 4–1(a) may perhaps mean that a party receiving more than 1% but less than 10% of the vote in the last general election has available to it the primary election procedure in order to nominate its candidates. However, the framework of Article 33 would seem largely to negative that possibility. In this connection, it is noted that the State, in its presentation to this Court, has apparently assumed that the primary election machinery is not available in 1970 to a party which polled less than 10% of the vote in 1968.

A petition route was available under former Maryland law in connection with Mr. Wallace's candidacy in 1968. But sections 4-1(d) and 7-1 provide that the petition route is only open if the party is not covered by the primary election requirements of sections 4-1(b) and 5-1 or by the primary meeting provisions of sections 4-1(c) and 6-1. Thus, the petition route under sections 4-1(d) and 7-1 is not available in this year 1970 to the American Party under any suggested construction of the words "entire vote." The only possible procedures open to that party are under either sections 4-1(b) and 5-1 or under sections 4-1(c) and 6-1.

### III.

Counsel for both sides have informed this Court that they know of no case, opinion or statement of any Maryland court, or of any Maryland executive or administrative official or body, which construes, or even suggests, the meaning of the words "entire vote"; and that, furthermore, there is no known Maryland administrative regulation or practice with regard thereto. Nor have any of counsel brought to the attention of this Court any judicial or administrative constructions of the same or similar words in statutes of other jurisdictions, and this Court, in the limited time available to it, has itself uncovered no helpful authority in this regard. Under those circumstances, this Court declines to construe the words "entire vote." This Court's role is limited to determining whether the Maryland election laws offend any federal constitutional principle. If there is more than one constitutionally permissible construction of the words "entire vote," it is for the Maryland authorities—not this Court—to make the choice.

In this case, the difficulty is that the State takes the position that the American Party, if the petition route under sections 4-1(d) and 7-1 is unavailable to it, is not presently able to use either the primary election or the primary meeting procedures provided respectively by sections 4-1(b) and 5-1, and by sections 4-1(c) and 6-1, because of defects in the law itself, particularly in section 11-1. In this connection, it is necessary to keep in mind that sections 4-1(b) and 5-1 provide that the candidates of a political party which polled 10% or more of the vote in the last preceding general election *shall* be nominated under the primary election procedures of the statute. There is no alternative offered. This is an absolute requirement. On the other hand, if that political party polled more than 1% but less than 10% of such vote, its candidates in the next election may be nominated by a primary meeting under sections 4-1(c) and 6-1. While this is not an absolute requirement, there is seemingly no alternative.[9] It is also true that section 4-1(c) does not contain the words "of the entire vote cast in the State in the last preceding general election" which are used in section 4-1(b), but the incorporation of those words into section 4-1(c) is compelled by the sequence in section 4-1. It is also true that section 6-1(a) refers to a political party "whose highest candidate" at the preceding general election "polled more than one per centum and less than ten per centum of the entire vote cast in the *State, county or other division or district for which the nomination is made*"; whereas, section 4-1(c) does not contain the above italicized words. (Italics added). But under the facts of this case, the tests set forth in sections 6-1(a) and 4-1(c) are the same since the only candidates of the American Party in the 1968 general election in Maryland were Mr. Wallace for President and Mr. Griffin for Vice-President.

As set forth above, the State's position is that the American Party received about 7.5% of the vote in 1968. However, the State also contends that the American Party does not meet the requirements of a party so as to enable

---

9. *But see* n. 8 *supra*.

it to proceed under section 6–1. An examination of Article 33 reveals no requirement that a party which received more than 1% but less than 10% of the vote in the last general election must adopt a constitution and bylaws. Section 11–1(a) requires a party which polled 10% or more of such vote to adopt a constitution and bylaws governing the conduct of its affairs. But nothing in section 11–1, or in section 6–1, or elsewhere in the Maryland law, requires a party which received more than 1% but less than 10% of that vote to adopt a constitution and bylaws, or to do anything other than follow the procedures set forth in section 6–1. During oral argument before this Court, the representatives of the Attorney General took the position that the primary meeting procedures provided in section 6–1 cannot be used unless the persons who attend that meeting are members of a "party" and, seemingly, have urged upon this Court the contention that the American Party is not, at the present time, a "party" as that term is used in section 6–1, unless and until it adopts a constitution and bylaws pursuant to section 11–1. However, section 6–1(b) expressly states that the primary meeting of a party which has no constitution and bylaws shall be conducted pursuant to Roberts Revised Rules of Order. Thus, section 6–1(b) recognizes the possibility that a party can exist without a constitution or bylaws. Additionally, it is noted that Mr. Wallace and Mr. Griffin were listed on the official November, 1968 ballots as the candidates of the American Party. The word "party" is not defined as such in the definition section of Article 33, namely, section 1–1. But if the word "party," as it is used in Article 33, means "political party," then it would appear that if the American Party assembles under section 6–1, it would be an organized group of the electorate seeking to gain control of government through the election of its candidates to office within the meaning of section 1–1(a) (15), which defines the words "political party."

The primary election machinery of section 5–1 applies to parties which polled 10% or more of the vote at the last general election but is only available to such a "political party" if the latter complies with section 11–1(a). That section would seem to make it impossible for any party covered by section 5–1 which does not presently have a duly constituted State central committee for each county of the State and each legislative district of Baltimore City ever legally to adopt a constitution and bylaws. Section 11–1 provides that a constitution and bylaws shall be adopted at a meeting of the political party to be convened by the party nominee for one of the offices in the following order of priority: Governor, United States Senator, Comptroller, Attorney General; and for such person to preside as president pro tem of the meeting until such time as party officers are elected. The American Party, in 1968, fielded candidates in Maryland only for the Presidency and the Vice-Presidency. However, even assuming that some other person could call the meeting, as for instance, in the case of the American Party, Mr. Wallace, even though he is not a resident of Maryland, nevertheless, another provision of section 11–1(a) bars the path to holding and conducting a meeting under section 11–1(a). This is true because the third sentence of that section requires that the delegates to the meeting be selected by the State central committee for each county and legislative district of Baltimore City, and then goes on to state how the number of delegates for each such county and legislative district is to be determined. Section 11–2 provides that each such central committee shall be selected as elsewhere provided in this article. Section 5–1 provides that any party subject to that section's requirements shall nominate all members of the State and local central committees of said political party by means of primary elections under section 5–1. Thus, there is a complete circle which starts with section 5–1, proceeds to section 11–1, then on to section 11–2, and back around

to section 5–1. Neither the State nor the plaintiffs have offered any solution for breaking through this circular barrier with regard to the forthcoming 1970 general elections, even if the American Party is determined to be a party within the classification established by sections 4–1(b) and 5–1, as plaintiffs claim it is. The State suggests that the American Party should utilize the petition route in 1970 and, if it meets the 10% test as a result of the votes it attracts in November, 1970, should then proceed to adopt a constitution and bylaws and meet the requirements of section 11–1 before the 1972 election. The State, however, specifies no way in which the present laws of Maryland permit the American Party (even if it should receive a 10% vote in 1970) to do for 1972 what they do not permit that party to accomplish in 1970, even assuming that the petition route is open in 1970, which it is not.

As noted, section 11–2(a) provides that any party which polled 10% of the votes cast at the previous general election shall have a State central committee, which shall be its governing body and which shall be composed of the members of the central committees of such party for the several counties and Baltimore City. Neither section 6–1 nor any other provision of the Maryland law requires that any party which received more than one percent but less than ten percent of the votes cast at such election shall have a State central committee, but section 11–3(a) does provide that the governing body of a political party shall be the State central committee and that no other organization shall be entitled to any recognition or status.

 Further, section 11–3(b) states that it shall be unlawful for any organization other than the State central committee to hold itself out as the official governing body of any political party and provides that violators of its provisions are subject to the maximum criminal penalty of a fine of $1000 and six months' imprisonment. While it may

well be that the intent of the framers of section 11–3 was to avoid a claim by any persons or organizations other than the State central committee to be the official party organization, see Culotta v. Raimondi, 251 Md. 384, 247 A.2d 519 (1968), nevertheless, the provisions of that section, taken together with the contentions stated in oral argument before this Court by the representatives of the Attorney General, create doubts which this Court cannot say are unreasonable with regard to whether the American Party legally can hold a primary meeting under section 6–1, can operate as a political party without a State central committee elected under sections 11–2 and 5–1, and can, after a primary meeting, field a slate for the November, 1970 ballot of candidates chosen pursuant to section 6–1. Even if there is no requirement in section 11–1 or elsewhere in the law that a political party which receives more than 1% but less than 10% of the vote cast at the last prior general election adopt a constitution and bylaws, there is a question as to whether or not such a party must have a State central committee.

There is no specific provision in Article 33 as to how a party which has polled more than 1% but less than 10% of the votes at the last general election can select a State central committee although there would seem to be no reason why it cannot hold a primary meeting pursuant to section 6–1 and establish any necessary party machinery in that meeting. While defendants have indicated to this Court that the section 6–1 procedure does not presently permit the American Party to elect a State central committee at a primary meeting, defendants may wish to reexamine that position in the light of this opinion.

In summary, it is clear that if the American Party is classified as a party which received 10% or more of the "entire vote" in the 1968 election, there is no way under the provisions of Maryland law, as now written, for it to hold a primary election and nominate its candidates. On the other hand, if the Ameri-

can Party is classified as a party which received more than 1% but less than 10% of the "entire vote" cast in November, 1968, section 11–3(b) and the State's position in this case cast a "chilling effect" upon the utilization by the American Party of the section 6–1 primary meeting machinery and upon the rights of those citizens of Maryland who desire in 1970 to constitute themselves as, operate under the aegis of, and run as candidates of, the American Party. Cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

## IV.

In Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), a majority of the Supreme Court concluded that the State of Ohio had made "it virtually impossible for any party to qualify on the [November 1968 general election] ballot except the Republican and Democratic Parties" (at 25, 89 S.Ct. at 8) and held that such a difference in treatment of the two major parties on the one hand and all other parties on the other hand constituted an "invidious" distinction in violation of the Equal Protection Clause of the Fourteenth Amendment (at 30, 89 S.Ct. 5). Mr. Justice Black for the majority held that the State of Ohio had impermissibly placed (at 30–31, 89 S.Ct. at 10–11):

\* \* \* \* \* \*

burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights of course, rank among our most precious freedoms. We have repeatedly held that freedom of association is protected by the First Amendment. And of course this freedom protected against federal encroachment by the First Amendment is entitled under the Fourteenth Amendment to the same protection from infringement by the States. Similarly we have said with reference to the right to vote: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." [Footnotes omitted.]

No extended discussion is required to establish that the Ohio laws before us give the two old, established parties a decided advantage over any new parties struggling for existence and thus place substantially unequal burdens on both the right to vote and the right to associate. The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot. In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limited First Amendment freedoms." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L. Ed.2d 405 (1963).

The State has here failed to show any "compelling interest" which justifies imposing such heavy burdens on the right to vote and to associate.

In *Williams*, the Court ordered that the candidates of one of the two complaining minor parties, the American Independent Party (George Wallace's party designation in Ohio in 1968), be placed on the ballot in the general election of 1968 as candidates of that party, but denied that relief to the Socialist Labor Party because the latter had sought relief in court proceedings so late as to make the printing of ballots "extremely difficult, if not, impossible" (at

35, 89 S.Ct. 5). The Court affirmed the District Court's order requiring Ohio to permit write-ins for candidates of the Socialist Labor Party. In concurring opinions, Mr. Justice Douglas and Mr. Justice Harlan expressed different emphases than those stated by Mr. Justice Black but reached the same results. Three separate dissents were filed by the Chief Justice, Mr. Justice Stewart and Mr. Justice White. Mr. Justice Stewart, while agreeing (at 51, 89 S.Ct. 5) that the Fourteenth Amendment imposes some election law limitations upon a state legislature, did not find Ohio's system in violation of that Amendment. Mr. Justice White (at 63, 89 S.Ct. 5) questioned why the Ohio law's petition provisions did not suffice. But nothing in either of the dissenting opinions of Mr. Justice Stewart or of Mr. Justice White provides any basis for believing that either of them would permit the State of Maryland in 1970 to make it impossible for the American Party to have its candidates on the November, 1970 ballots and to be relegated to "write-ins." In this connection, it is to be noted that the majority in *Williams* held that the American Independent Party could not be confined to write-ins, and that the Socialist Labor Party could only be so limited because of its tardiness in seeking relief. In this case, at this time, the American Party in Maryland in 1970 cannot be confined to the write-in opportunities provided by section 14–1(i).

While, in *Williams*, the majority concluded that Ohio's election laws made it "virtually impossible for a new political party" (at 24, 89 S.Ct. at 7) to be placed on the ballot in 1968, there was room for difference of opinion as to the effect of the obstacles in the Ohio law upon the fielding of candidates by minority parties. In the case at bar, there is no question but that, at the moment, the American Party is blocked by the law itself and by the State's position.

Mr. Chief Justice Warren, in his dissent in *Williams*, stated his view that under the facts in the *Williams* case, the federal courts should abstain from interfering with Ohio's conduct of its election process, particularly since

> * * * neither the American Independent Party nor the Socialist Labor Party made an effort to comply with Ohio's election laws. Nor has either timely invoked the jurisdiction of the courts. That both had the opportunity to do so cannot be denied. * * * [at 65, 89 S.Ct. at 28].

In this case, the American Party has admittedly been trying since October, 1969, to find a way, in consultation with Maryland officials, to proceed under the Maryland election law. While it clearly would have been preferable for plaintiffs to have instituted this suit in a Maryland court, this Court cannot, in view of the closeness of the March registration deadline, abstain from exercising its jurisdiction.[10]

■■ *Williams* teaches that a third party must have a reasonable opportunity to place its candidates on the ballot in a general election. But nothing in *Williams* would seem to require that every party must be given the opportunity to hold a primary election. Plaintiffs seem to contend that it is a violation of federal constitutional standards for the State of Maryland to afford and require the use of the primary election route by a political party which polled 10% or more of the "entire vote" in the last general election and at the same time to deny that route to a political party which polled more than 1% but less than 10% of such vote and to make available to the latter only the primary meeting procedures set forth in section 6–1.[11] Such a classification is unconstitutional only if it is unreasonable. This Court holds

---

10. That deadline, less than a month away, prevents this Court from temporarily abstaining until plaintiffs are given the opportunity to institute a state court proceeding and awaiting its outcome, the course adopted in Wright v. Richter, 301 F.Supp. 1345 (D.Del.1969).

11. *But see* n. 8 *supra.*

that under the facts of this case the 10% requirement is not an unreasonable qualification to impose upon a political party before it is enabled and required to hold a primary election regardless of whether the plaintiffs' or the defendants' interpretation of the words "entire vote" is adopted. Under different facts, this may or may not be true.[12]

Defendants stress that at the present time only 188 Marylanders have registered in Baltimore City and 16 counties as members of the American Party. That fact does not mean that that party and its members and candidates should not be afforded the opportunity to take part fully in the 1970 general election. The State of Maryland must make it possible for candidates of the American Party to be chosen for placement upon the ballot in November, 1970 by some applicable statutory route. The Maryland law offers three routes to parties which seek to run candidates in a general election—primary election, primary meeting and petition. The terms of the law render the petition procedure presently unavailable to the American Party in view of the 1968 vote statistics. To meet federal constitutional requirements, one of the other procedures therefore must be made so available. In so doing, the State of Maryland may construe the words "entire vote" and classify the American Party at the present time either as a party which polled 10% or more of the vote in 1968, or as a party which polled more than 1% but less than 10% of the vote. That choice is for the State.

### V.

This Court hereby declares that the American Party has rights as a political party under Article 33 in accordance with this opinion and will enter a decree to that effect. However, this Court will delay the entry of a final decree implementing that declaration until a fur-

ther presentation of the views of the parties with regard to the nature of the affirmative relief it should grant. This Court will reconvene on February 19, 1970 at 2:00 p. m. to hear such further argument.

### FINAL DECREE

This cause having been heard on February 12, 1970 and an opinion having been filed on February 17, 1970; counsel for all parties having again appeared before this Court on February 19, 1970 to present their views "with respect to the nature of the affirmative relief [this Court] should grant," pursuant to said opinion; and the parties having agreed that plaintiffs should be given relief under the primary meeting provisions of Md.Ann.Code art. 33, § 6–1 et seq. (1957 Ed. as amended, Supp. 1969);

Now, therefore, it is this 25th day of February, 1970, by the United States District Court for the District of Maryland, ordered, adjudged and decreed:

(1) The American Party of the State of Maryland is a "political party" within the meaning of Md.Ann.Code art. 33, § 1–1(a) (15) (1957 Ed. as amended, Supp. 1969);

(2) The said party be, and it hereby is, permitted at a primary meeting, or at a party organizational meeting called by giving the notice prescribed by said section 6–1, or by written notice by registered mail to all persons registered in Maryland as members of the party one week before the said notices are mailed, to adopt a Constitution and Bylaws, in which *inter alia,* provision shall be made for a state central committee and for the number, qualifications, terms of members, and geographical apportionment, of the said state central committee. Any "primary meeting" referred to in this Order shall be called and conducted in accordance with the provisions of Md. Ann.Code art. 33, § 6–1 (1957 Ed. as amended, Supp. 1969);

12. How defendants' construction of the words "entire vote" would apply to a general election following one in which

there are a large number of statewide offices at stake is a question which this Court has no need to reach in this case.

(3) After such Constitution and By-laws have been adopted, as provided in (2) *supra*, either at the same primary meeting or at the same organizational meeting referred to under (2) *supra*, or at a subsequent primary meeting, the said party be, and it hereby is, permitted to select the members of its state central committee, in accordance with its said Constitution and Bylaws;

(4) After such Constitution and By-laws have been adopted as provided in (2) *supra*, and after the members of its state central committee have been selected as provided in (3) *supra*, the said party be, and it hereby is, permitted to nominate its candidates for statewide and local offices in the general election to be held in Maryland on November 3, 1970 at any primary meeting. By agreement of the parties, only persons residing in a political subdivision of the State of Maryland (i. e., Baltimore City and the 23 counties) shall have a voice in selecting candidates to run for local offices of that subdivision in the general election on November 3, 1970;

(5) Willard A. Morris, State Administrator of Election Laws, or his successor, be, and he is hereby, directed (a) to accept, when offered for filing with his office, the duly adopted Constitution and Bylaws of the American Party of the State of Maryland provided they contain the provisions for a state central committee referred to in (2) *supra*; (b) to accept the names of those persons selected as members of the party's state central committee in accordance with (3) *supra*; and (c) to accept as candidates for statewide and local offices in the general election of November, 1970, and to place upon the ballot to be used in that election, the names of those persons duly nominated for such offices by the said party at a primary meeting held in accordance with (4) *supra*; provided that timely certificates of candidacy are filed and filing fees are timely paid in accordance with Md.Ann. Code art. 33, § 4A–1 to 4A–8, inclusive (1957 Ed. as amended, Supp. 1969).